**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

FROST & MILLER, LLP,                                        DOCKET NO.

                              Plaintiff,

            -against-                                       COMPLAINT

HEAVEN'S WAY INVESTMENT TRUST, RAYSHAWN
DELBRIDGE, AARON CAIN McKNIGHT,
SUBGALLAGHER INVESTMENT TRUST, ANN FOX,
FEMI OMOMO and HENDERSON & JONES LIMITED,

                              Defendants.
-------------------------------------------------------------------x

Plaintiff as and for its complaint against the Defendants alleges as follows:

A.      **Parties**

1.      Plaintiff, Frost &Miller, LLP, is a New York limited liability partnership with its principal place of business located at 260 Madison Avneue,17th Floor, New York, New York 10016. At all relevant times, the partners of Plaintiff are Gregory Frost ("Frost") and Kenneth N. Miller ('Miller"). Frost and Miller are each attorneys licensed to practice law in the State of New York and this Court for over 45 years.

2.      Defendant Heaven's Way Investment Trust ("HWIT"), upon information and belief, is a trust formed under the laws of the State of Georgia and at all relevant times its principal place of business was located at 2180 Satellite Boulevard, Suite 400, Duluth, Georgia 30097.

3.      Defendant Rayshawn Delbridge ("Delbridge"), upon information and belief, is a citizen of the State of New Jersey residing at 300 Constitution Avenue, Bayonne, New Jersey 07002 and is the principal and chief executive officer of HWIT.

4.      Defendant Aaron Cain McKnight ("McKnight"), upon information and belief, is a citizen of the State of Texas residing at 3026 Mockingbird Lane, Dallas, Texas 75205.

5.      Defendant SubGallagher Investment Trust ("SubGallagher"), upon information and belief, is a trust formed and existing under the laws of Wyoming with its principal place of business located at 30 N. Gould Street, Suite 5817, Sheridan, Wyoming and also has conducted business at 1942 Broadway Street, Suite 314C, Boulder, Colorado 80302 and PO Box 1830, Midlothian, Texas 76065.

6.      Defendant Ann Fox ("Fox"), upon information and belief, is a citizen of the United Kingdom residing at 43 Suffolk Road, Westbury Wiltshire, BA13 3FD, United Kingdom.

7.      Defendant Femi Omomo ("Omomo"), upon information and belief, is a citizen of the United Kingdom residing at 17 Furze Close, Horley, RH6 9SL, United Kingdom.

8.      Defendant Henderson & Jones Limited ("H&J"), upon information and belief, is a private United Kingdom company, company registration number 09692925, and at all relevant times its principal place of business is located at 7/10 Chandos Street, 4th Floor, Cavendish Square, London, United Kingdom W1G DQ, which specializes in purchasing litigation and arbitration claims from insolvent individuals and companies.

B.      **Jurisdiction and Venue**

9.      The Court has subject matter jurisdiction herein pursuant to 28 U.S.C §1332(a)(3) because Plaintiff and Defendants, WHIT, Delbridge, McKnight, SubGallager and Moore are citizens of different states of the United States and Defendants, Fox, Omomo and H&J are

citizens of a foreign state, the United Kingdom and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

10.     This Court has specific personal jurisdiction over Defendants HWIT and Delbridge because Delbridge acting on behalf of HWIT and individually  has purposefully availed himself of the privileges and benefits of conducting business in the State of New York; and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in New York including (1) using Plaintiff's and Miller's names and their addresses in New York in the Agreement without their authorization; (2) improperly and wrongfully naming Plaintiff as escrow agent in the Agreement and in connection therewith using Plaintiff's office address and bank account in  New York; and (3) causing Fox and Omomo to wire  the Cash Deposit of $345,000.00 to the Plaintiff's bank account in New York which wire transfer is the basis for this action.

11.     This Court has specific personal jurisdiction over Defendant McKnight because he has purposefully availed itself of the privileges and benefits of conducting business in the State of New York; and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in New York including (1) providing Delbridge  Plaintiff's and Miller's names and Plaintiff's office address in New York which were used in the Agreement;  (2) contacting Plaintiff in New York to arrange for the Plaintiff's to receive the wire the Cash Deposit in  the Plaintiff's general operating bank account bank account located in New York; and (3) contacting Plaintiff in New York to cause Plaintiff to disburse the Cash Deposit in accordance with his instructions which act is one of the basis for this action.

12.     This Court has specific personal jurisdiction over Defendant  SubGallager because it  has purposefully availed itself of the privileges and benefits of conducting business in

the State of New York; and a substantial part of the events or omissions giving rise to Plaintiff's

claims occurred in New York including (1) SubGallager issuing a Performance/Surety Bond in

the amount of $345,000.00 insuring the Cash Deposit against theft or fraud while it was in the

possession of WHIT or the purported escrow agent, Plaintiff as a result of which Plaintiff was a

third-party beneficiary of the Performance/Surety Bond; and (2) breaching its obligation to pay

the Bond upon the loss of the Cash Deposit causing damage to Plaintiff in New York.

13.     This Court has specific personal jurisdiction over Defendants Fox and Omomo

because they purposefully availed themselves  of the privileges and benefits of conducting

business in the State of New York; and a substantial part of the events or omissions giving rise to

Plaintiff's claims occurred in New York including (1) wiring funds to Plaintiff's general

operating bank account located in New York; (2) alleging that Plaintiff acted as escrow agent

under the Agreement in New York and that Plaintiff which is located in New York had  a

purported fiduciary relationship with them; (3) filing a disciplinary action with the New York

State Bar Grievance Committee; and (4) any damages that may have been sustained by Fox

and/or Omomo caused by the Defendants HWIT, Delbridge, McKnight and SubGallagher

occurred here in New York.

14.     This Court has specific personal jurisdiction over Defendant  H&J because it  has

purposefully availed itself of the privileges and benefits of conducting business in the State of

New York; and a substantial part of the events or omissions giving rise to Plaintiff's claims

occurred in New York including threatening and harassing Plaintiff through a series of emails,

telephone calls, attempted services of various alleged legal documents in New York as part of its

attempts to commence a legal action in the Courts of the United Kingdom to recover claims

allegedly held by Fox and Omomo which H&J unlawfully purchased from Fox and Omomo, against F&M arising out of events that occurred here in New York

15.     Declaratory judgment is appropriate with respect to the Fifth, Sixth and Seventh Cause of Action herein because an actual controversy exists between Plaintiff and Defendants Fox, Omomo and H&J. H&J in violation of applicable New York and Georgia law has purchased the claims of Fox and Omomo and as such now stands in the place of Fox and Omomo as to those alleged claims. The claims of Fox and Omomo against Plaintiff are based upon purported malpractice and breach of fiduciary duty. Despite that these alleged claims arise from actions here in New York, that Plaintiff had and has no contact whatsoever with the United Kingdom regarding the subject of these claims  and that the Plaintiff and its partners are governed by the laws, rules and regulations promulgated by the State of New York regulating the conduct of New York attorneys, H&J is in the process of commencing a baseless  lawsuit against Plaintiff  in the United Kingdom in excess of  four hundred and fifty thousand dollars ($450,000.00). Accordingly, Plaintiff causes of action for declaratory judgment pursuant to 28 U.S.C. §2201(a) since actual controversy exists between the parties.

16.     Venue is proper in this district under 28 U.S.C §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims hereinafter set forth occurred in this district.

C.     **Statement of Facts**

17.     The following facts were only learned by Plaintiff approximately five months after they occurred.

5

18.     On June 10, 2018, a Project Funding Asset Management Agreement was entered into between Defendants HWIT and Fox (the "Agreement"). A copy of the Agreement is annexed hereto as Exhibit A.

19.     The Agreement provides that Fox was to provide a cash deposit of $345,000 (the "Cash Deposit") to be invested by HWIT in a "Non-Recourse Project Funding by Private Leveraging Transactions."

20.     According to the Agreement the Cash Deposit was to be sent by Fox to an escrow account maintained by Plaintiff and Plaintiff was purportedly to act as escrow agent. In fact, Plaintiff was never advised of the Agreement, had no knowledge of the existence of the Agreement or that the Agreement called for Plaintiff to act as escrow agent.

21.     Plaintiff did not authorize or consent to the use of its name in connection with the Agreement since it had no knowledge of the Agreement or the transaction contemplated by the Agreement.

22.     Plaintiff did not act as attorney for any of the parties to the Agreement or the underlying transaction, nor did Plaintiff in any manner participate in the structuring, negotiation or drafting of the Agreement or any related document.

23.     Section 4.2 of the Agreement provides that HWIT would provide a Performance Bond/Surety Bond to be issued by SubGallagher in the amount of $345,000.00 insuring the Cash Deposit against theft or fraud while it was in the possession of HWIT or the purported escrow agent, Plaintiff. A copy of the Performance Bond is annexed hereto as Exhibit B.

24.     On June 11, 2018, Miller received a call from McKnight, who Plaintiff had at times represented individually and certain of his companies in certain specific matters. McKnight advised Miller Plaintiff would be receiving funds he was to invest on behalf of the sender. Just

prior to that phone call with McKnight, McKnight sent Miller, by email, a copy of a document which appears to be a SWIFT. The SWIFT indicated Danielle Amy Fox was the sender of the funds, not Fox. There were no other details regarding the sender in the SWIFT other than her name. There was no mention in the SWIFT that these funds were escrow funds, that they were to be held pursuant to an arrangement, nor was there any reference to the Agreement or any underlying transaction. A copy of the SWIFT received from McKnight is annexed hereto as Exhibit C.

25.     During McKnight's call to Miller, McKnight advised Miller that the funds would be sent by wire transfer into Plaintiff's general operating account. McKnight specifically advised Miller that those funds were intended for his benefit and were under his sole control.  In further response to Miller's questions regarding any limitations on the use of the funds McKnight stated that there was no escrow agreement or escrow arrangement as to these funds. McKnight further advised Miller that no one else had the right to issue any instructions with respect to those funds and that when Plaintiff received the funds they were to be disbursed strictly in accordance with McKnight's instructions. To be clear, McKnight's response to Miller's questions stated that the funds to be received were not escrow funds. McKnight never mentioned the Agreement or that pursuant to the Agreement Plaintiff was to act as an escrow agent with respect to the funds it was receiving. McKnight also did not disclose to Miller or in any way mention his relationship or any agreement he had with HWIT or Delbridge regarding these funds. McKnight's responses that there was no escrow agreement or arrangement as these funds did not warrant further inquiry

26.     On June 13, 2018, the funds were wired into Plaintiff's general operating account.

27.     Once the funds were received, Plaintiff notified McKnight who then sent Miller an email with explicit instructions as to how the funds were to be disbursed. On June 13, 2018,

Miller on behalf of Plaintiff disbursed the funds in accordance with McKnight's instructions. After wiring the funds Miller called McKnight to advise him that the funds had been wired out of the account.

28.     After the funds were disbursed, Plaintiff and its partners had absolutely no involvement whatsoever as to the investment of the funds or participated in any manner in the transaction regarding the investment of the funds.

29.     At the time the funds were received and disbursed by Plaintiff, Plaintiff and its partners had never met, spoken with, had any contact with or ever heard of Heaven's Way, Delbridge, Fox or Omomo. Further, F&M did not enter into an escrow agreement or any agreement whereby F&M was retained as attorneys on behalf of Heaven's Way, Delbridge, Fox or Omomo with respect to the Agreement or any funds that were being invested by Fox pursuant to the Agreement.

30.     On November 15, 2018, five months after the funds had been disbursed Miller received a telephone call from Omomo, who identified himself as Fox's "partner" and claimed he was representing Fox. Omomo advised Miller that Fox had not received the promised return on the investment and he was inquiring as to the whereabouts of the funds. This was the first time F&M or its partners had ever heard from Fox or anyone else representing her. In that conversation Miller advised Omomo he had no knowledge of the transaction to which he was referring, but Omomo did mention McKnight's name and Miller advised Omomo that he would call McKnight regarding Omomo's claims.

31.     Thereafter, Miller spoke with McKnight regarding his conversation with Omomo advising that Omomo had mentioned an investment his partner, Fox, had made. At this time, neither Omomo or McKnight mentioned the Agreement or any relationship to the transaction

8

contemplated by the Agreement. McKnight advised Miller he would call Omomo and resolve the issue as to the alleged investment.

32.     In April, 2019, Miller was contacted by Delbridge who requested that Plaintiff act as escrow agent for HWIT and said he had been referred to Plaintiff by McKnight. At that time, Plaintiff was not aware of Delbridge's or HWIT's involvement in the subject Agreement or transaction. Nor did Delbridge mention the transaction with Fox or the Agreement. Miller did not associate HWIT or Delbriodge with Fox or Omomo since he had no knowledge of the Agreement or underlying transaction. In order to accommodate Delbridge, the Plaintiff prepared its standard escrow agreement which was customary when Plaintiff was requested to act as an escrow agent.

33.     On July 23, 2019, Miller received an email with a letter attachment from Latane Mason, an attorney in Maryland, claiming to represent Fox and Omomo, addressed to McKnight, WHIT in care of Delbridge and SubGallagher, which had issued the Performance Bond, demanding the return of Fox's funds. The letter falsely stated that Miller had prepared the Agreement and Performance Bond and several other false statements.

34.     On July 24, 2019, Miller replied to Mr. Mason's letter setting forth the true facts and asserting that Plaintiff nor its partners had prepared the Agreement or Performance Bond and had no communications with the parties to the Agreement or any knowledge of the Agreement and underlying transaction.

35.     On July 31, 2019, for the first time Plaintiff received and read a copy of the Agreement it had received from Mr. Mason as a result of which Miller contacted Delbridge to hear his explanation as to why Plaintiff's name and Miller's name were used in the Agreement without their knowledge and authorization.

36.     Delbridge admitted to Miller that his attorney drafted the Agreement, that he used Plaintiff's name and Miller's name in the Agreement without their authorization and that he never sought permission to do so. Delbridge stated he received Plaintiff's and Miller's name from McKnight. Delbridge also admitted he was responsible for improperly and wrongfully naming Plaintiff as escrow agent in the Agreement. Delbridge also stated that he believed the Performance Bond was prepared by Subgallagher, the insurance company that issued the **Performance Bond.**

37.     The errors in the Agreement evidences that Plaintiff had nothing to do with the preparation or drafting of the Agreement. The Agreement provides Plaintiff's address as 401 Fifth Avenue, New York, New York. Plaintiff, at the time of the Agreement, had been located at 260 Madison Avenue, New York, New York for over seven years. If Plaintiff participated in the Agreement, it certainly would not have provided an incorrect address for the firm. In addition, the account number for Plaintiff's IOLA Trust account is also incorrect. The account number used in the Agreement is for Plaintiff's general operating account.

38.     Thereafter, Plaintiff confronted McKnight and Delbridge regarding the Agreement, the contents of Mr. Mason's letter and his demands for payment. McKnight again assured Plaintiff that the matter would be resolved. Frost demanded that McKnight advise him as **soon as he had resolved the matter.**

39.     Subsequently, Fox and Omomo filed a disciplinary action with the New York State Attorney Grievance Committee ("Committee") against Plaintiff and Miller. The complaint contains the same false allegations as set forth in Mr. Mason's letter. In February 2020, Plaintiff and Miller filed a detailed response to this complaint again refuting the numerous false and

libelous allegations made against them as to their preparation of the Agreement, related

documents and participation in the transaction.

40.     Plaintiff also submitted an affidavit from McKnight confirming Plaintiff and its

partners non-involvement in the Agreement, other documents and the transaction and the

unauthorized use of Plaintiff's name in the Agreement. Plaintiff has not received any further

communication from the Committee over the approximately 17 months since it submitted its

response.

41.     McKnight in his affidavit to the Committee stated:

> To be clear, I had no discussions with Mr. Delbridge regarding an escrow
> agreement or escrow arrangement, nor was there a requirement for an
> escrow account since it was my understanding that the funds upon arrival
> to F&M's account were to be completely under my direction and that I was
> to invest those funds as I discussed with Mr. Delbridge in certain structured
> high leverage financial transactions with a guaranteed return.
>
> Although I had numerous conversations with Mr. Delbridge, I did
> not advise Mr. Miller or F&M of this possible transaction. I never advised
> Mr. Miller of Mr. Delbridge's or Heavens Way's involvement in the
> transaction. Nor did I identify the investor in the transaction to Mr. Miller
> or anyone at F&M since I did not know the investor's name only that Mr.
> Delbridge was providing the investor.  Further, Mr. Delbridge did not send
> me a copy of the Project Asset Funding Management Agreement (the
> "Agreement") …. Accordingly, Mr. Miller and F&M had absolutely no
> knowledge of the transaction

42.     On March 26 2021, Plaintiff received an email from the Cardium law firm located

in London on behalf of its client, H&J, in which they state H&J had purchased the alleged claims

of Fox and Omomo against our law firm from Fox and Omomo. They enclosed a document

entitled the "Pre-Action Protocol for Professional Negligence".

43.     H&J have threatened to commence litigation against Plaintiff in the courts in the

United Kingdom unless Plaintiff pays their settlement demand set forth in the Pre-Action

Protocol which is substantially in excess of the Cash Deposit paid under the Agreement.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST DEFENDANTS HWIT AND DELBRIDGE

44.     Defendants HWIT and Delbridge wrongfully, knowingly, intentionally and maliciously used Plaintiff's name in the Agreement without Plaintiff's knowledge, consent or authorization.

45.     Defendants HWIT and Delbridge wrongfully, knowingly, intentionally and maliciously identified Plaintiff as escrow agent in the Agreement with respect to the Cash Deposit to be made by Defendant Fox, despite the fact that HWIT and Delbridge knew that Plaintiff did not consent or agree to act as escrow agent, did not have an escrow agreement with any of the parties to the Agreement and had no knowledge of the Agreement or its terms.  Nor did HWIT or Delbridge ever attempt to contact Plaintiff to obtain their consent to the use of its name in the Agreement or its consent to act as escrow agent.

46.     Defendants HWIT and Delbridge wrongfully, knowingly, intentionally and maliciously misappropriated Plaintiff's name and misidentified Plaintiff as escrow agent for the purpose of fraudulently inducing Defendant Fox to invest her alleged funds.

47.     As a result of the wrongful, knowing, intentional and malicious fraudulent misconduct, Plaintiff has been damaged in an amount not presently ascertainable, but believed to be in excess of $450,000.00 together with an award of punitive damages in an amount to be determined by the trier of the facts herein.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST DEFENDANTS HWIT AND DELBRIDGE

48.     Plaintiff repeats paragraphs 1 through 47 as if fully set forth herein at length.

49.     Defendants HWIT and Delbridge unlawfully used Plaintiff's name in the Agreement without their authorization or consent to fraudulently induce Fox to enter into the Agreement and provide the Cash Deposit called for under the Agreement.

50.     The foregoing actions of Defendants HWIT and Delbridge were in violation of New York General Business Law §380-S.

51.     By virtue of the foregoing, Plaintiff has been damaged in an amount not presently ascertainable, but believed to be in excess of $450,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST DEFENDANT McKNIGHT

52.     Plaintiff repeats paragraphs 1 through 51 as if fully set forth herein at length.

53.     Defendant McKnight aided and abetted Defendants HWIT and Delbridge in their wrongful use of Plaintiff's name and identification as escrow agent in the Agreement by providing HWIT and Delbridge with the information set forth in the Agreement as to Plaintiff.

54.     Upon information and belief, sometime in mid-2018 Delbridge approached McKnight regarding an investment the two had previously discussed. Delbridge advised McKnight that he had an investor who was interested in investing in the subject transaction on the terms they had discussed. Delbridge advised McKnight he was preparing a contract with the investor and asked McKnight where he should send the funds to be invested. McKnight told Delbridge the funds should be sent to Plaintiff which had represented him on prior occasions where they had received funds from potential investors.

55.     As a result of the foregoing, Plaintiff has been damaged in an amount not presently ascertainable, but believed to be in excess of $450,000.00.

## AS AND FOR A FOURTH CAUSE OF ACTION
## AGAINST DEFENDANT HWIT, DELBRIDGE AND  McKNIGHT

56.     Plaintiff repeats paragraphs 1 through 55 as if fully set forth herein at length.

13

57.     Defendants HWIT, Delbridge and McKnight wrongfully, knowingly, intentionally and maliciously failed to advise Plaintiff of the Agreement, the underlying transaction and Plaintiff's purported role as "escrow agent" pursuant to the Agreement.

58.     If Defendants had not omitted to advise Plaintiff of the Agreement, the underlying transaction and Plaintiff's purported role as "escrow agent' pursuant to the Agreement, Plaintiff would have undertaken to prepare an escrow agreement which would have included the party or parties who were to instruct Plaintiff as to the release of the funds and the conditions of such release and would have included Plaintiff's standard requirements for an escrow agreement protecting Plaintiff in its role as escrow agent.

59.     Because of Defendants HWIT, Delbridge and McKnight wrongful, intentional and malicious omissions failing to advise Plaintiff of the Agreement and underlying transaction, Plaintiff was precluded from undertaking the necessary steps to protect itself.

60.     As a result of the wrongful, intentional and malicious fraudulent misconduct, Plaintiff has been damaged in an amount not presently ascertainable, but believed to be in excess of $450,000.00 together with an award of punitive damages in an amount to be determined by the trier of the facts herein.

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST DEFENDANTS SUBGALLAGHER

61.     Plaintiff repeats paragraphs 1 through 60 as if fully set forth herein at length.

62.     Section 4.2 of the Agreement provides that the Performance Bond would cover 100% of the initial capital Amount (the Cash Deposit) based on theft or fraud while the funds were in the possession of HWIT or the purported escrow agent, Plaintiff.

63.     This section clearly evidences that the purported escrow agent, Plaintiff was intended as a third-party beneficiary of the Performance Bond issued by Defendant SubGallager.

64.     Further, the Performance Bond identifies, the purported escrow agent, Plaintiff, as one of the beneficiaries of the protection provided by the Performance Bondinsureds.

65.     Upon information and belief, Defendant SubGallager failed to perform its obligations under the Performance Bond and did not pay Defendant Fox the Cash Deposit as provided for under the terms of the Bond.

66.     As a result of the foregoing, Plaintiff has been damaged in an amount not presently ascertainable, but believed to be in excess of $450,000.00.

### AS AND FOR A SIXTH CAUSE OF ACTION
### AGAINST DEFENDANTS FOX, OMOMO and H&J

67.     Plaintiff repeats paragraphs 1 through 66 as if fully set forth herein at length.

68.     Pursuant to its website, Defendant H&J specializes in purchasing the litigation and arbitration claims from insolvent individuals and companies.

69.     On March 19, 2021, H&J purchased the claims of Defendants Fox and Omomo arising under the Agreement, including their alleged claims against Plaintiff, the purported escrow agent under the Agreement.

70.     The sole purpose of the purchase of the claims was to commence litigation against Plaintiff as evidenced by the Letter of Claim written to Plaintiff by H&J's United Kingdom attorneys, the Cardium Law firm, and the over 100 page Pre-Action Protocol served with the Letter of Claim. The Letter of Claim is annexed hereto as Exhibit D. Inexplicably, the Letter of Claim is only against Plaintiff and is not made against the parties that participated in the Agreement and underlying transaction.

71.     The Letter of Claim demanded that Plaintiff pay H&J the sum of $458,277.78 allegedly for the claims of Fox and Omomo pursuant to the Agreement including interest at a

rate of 8% above the Bank of England Base Rate, costs and legal fees which demand was threatened to increase significantly if the action were to proceed to litigation.

72.     Plaintiff's response to the Pre-Action Protocol is due on August 6, 2021. Pursuant to several communications Plaintiff has received from H&J's attorneys, if Plaintiff does not accede to H&J's settlement demands it will immediately commence an action against Plaintiff in the Courts of the United Kingdom despite the fact that there is no basis to assert jurisdiction over the Plaintiff in the United Kingdom.

73.     H&J's business plan is to acquire litigation claims from others to commence or continue suit on these claims. H&J's acquisition of Fox's and Omomo's alleged claims was for no other purpose than to threaten or commence a lawsuit against Plaintiff. H&J intended to improperly coerce Plaintiff to pay funds it has no legal obligation to pay to Fox or Omomo to profit from the purchase of the claims. The action against Plaintiff was not merely an incidental or secondary purpose of H&J's purchase of the claims, but its very essence.

74.     Section 13 of the Agreement provides that in any legal action to enforce the Agreement the applicable law in such action shall be the law of the State of Georgia.

75.     Since Defendant H&J purchased the claims of Defendants Fox and Omomo under the Agreement it is bound by the terms of the Agreement, including the stated Section 13. Further, the law of the United Kingdom does not apply to the Agreement or this Action.

76.     Under Georgia and New York law the agreement between Fox and Omomo and H&J whereby Fox and Omomo sold and H&J purchased the alleged claims from Fox and Omomo against Plaintiff constituted the offense of champerty and accordingly, that agreement is null and void and unenforceable.

77.     Based upon the foregoing, Plaintiff requests that the Court pursuant to 28 U.S.C. §2201 et seq., issue a declaratory judgment that the purchase by H&J of the alleged claims of Fox and Omomo against Plaintiff constitutes the offense of champerty and is therefore, null and void and of no further force and effect.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### AGAINST DEFENDANTS FOX, OMOMO and H&J

78.     Plaintiff repeats paragraphs 1 through 77 as if fully set forth herein at length.

79.     Based upon the facts as stated herein, Plaintiff and its partners had no knowledge of the Agreement, nor did they prepare the Agreement or any related document. Further, Plaintiff, as stated, had no communications with Fox and/or Omomo until over five months after the Agreement was executed and the subject transaction closed.

80      Based on these facts, Plaintiff did not act as escrow agent under the Agreement or have any relationship with Fox and/or Omomo including any fiduciary obligation to Fox and Omomo. Nor can such a relationship or obligation be foisted upon Plaintiff and its partners.

81.     The attempt, and continued attempt, by Fox, Omomo and HJ to insist that Plaintiff was the escrow agent for the Cash Deposit allegedly sent by Fox is a fiction of which they are aware.  These are frivolous and specious allegations. There is no factual basis for a finding that Plaintiff was the escrow agent under the Agreement and there was and is no fiduciary obligation from Plaintiff to Fox and or Omomo created by the facts of this case.

82.     Accordingly, Plaintiff requests that the Court issue a declaratory judgment pursuant to 28. U.S.C. §2201 et seq., finding that Plaintiff was not the escrow agent under the Agreement and had no fiduciary obligation to Fox and/or Omomo.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## AGAINST DEFENDANTS FOX, OMOMO and H&J

83.     Plaintiff repeats paragraphs 1 through 82 as if fully set forth herein at length.

84.     Defendant Fox purportedly sent the Cash Deposit pursuant to the Agreement to Plaintiff's general operating account on June 18, 2018.

85.     Plaintiff in accordance with the instructions of its then client, McKnight disbursed the Cash Deposit on that same day.

86.     This one act of Plaintiff and its partners is the entire basis of the alleged professional negligence/malpractice and breach of fiduciary obligation claims asserted by H&J, Fox and Omomo.

87.     Plaintiff is a New York limited liability partnership and its partners are licensed to only practice law under the State of New York. Accordingly, New York law governs the professional conduct of the Plaintiff and its partners.

88.     Under New York law, the statute of limitations governing actions for professional negligence/malpractice and breach of fiduciary obligations where money damages is sought is three years, NY CPLR §213. The statutes of limitations commence to run on the date of the event constituting the alleged negligence/malpractice or the breach of fiduciary obligation which in this case is June 13, 2018.

89.     Accordingly, the alleged claims of H&J, Fox and Omomo against Plaintiff and its partners are time-barred.

90.     Based upon the foregoing, Plaintiff requests that the Court issue a declaratory judgment pursuant to 28 U.S.C. §2201 et seq., finding that the alleged claims of H&J, Fox and Omomo against Plaintiff are barred by the applicable Statutes of Limitations.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(a)    On the First Cause of Action damages to be awarded against Defendants Heaven's Way Investment Trust and Rayshawn Delbridge to Plaintiff in an amount not presently ascertainable, but believed to be in excess of $450,000.00 together with an award of punitive damages in an amount to be determined by the trier of the facts herein;

(b)    On the Second Cause of Action damages to be awarded against Defendants Heaven's Way Investment Trust and Rayshawn Delbridge to Plaintiff in an amount not presently ascertainable, but believed to be in excess of $450,000.00;

(c)    On the Third Cause of Action damages to be awarded against Defendant Cain McKnight to Plaintiff in an amount not presently ascertainable, but believed to be in excess of $450,000;

(d)    On the Fourth Cause of Action damages to be awarded against Defendants Heaven's Way Investment Trust, Rayshawn Delbridge and Cain McKnight to Plaintiff in an amount not presently ascertainable, but believed to be in excess of $450,000.00 together with an award of punitive damages in an amount to be determined by the trier of the facts herein;

(e)    On the Fifth Cause of Action damages to be awarded against Defendants SubGallagher Investment Trust and Patricia Moore to Plaintiff in an amount not presently ascertainable, but believed to be in excess of $450,000.00;

(f)    On the Sixth Cause of Action a declaratory judgment that the Agreement between Defendants Henderson & Jones Limited and Ann Fox and Femi Omomo whereby Henderson & Jones Limited purchased the alleged claims of Ann Fox and Femi Omomo against Plaintiff is in violation of the champerty laws of the State of Georgia and is null and void and unenforceable;

19

(g)     On the Seventh Cause of Action a declaratory judgment by the Court that Plaintiff and its partners were that Plaintiff was not the escrow agent under the Agreement for the Cash Deposit and neither Plaintiff or its partners had any fiduciary obligation to Defendants Ann Fox and/or Femi Omomo;

(h)     On the Eighth Cause of Action a finding that the purported claims of Defendants Henderson & Jones Limited, Ann Fox and Femi Omomo are barred by the applicable New York Statutes of Limitations;

(i)     all with interest thereon at the statutory rate of 9% per annum from June 13, 2018 together with the costs and disbursements of this action; and

(j)     such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       August 5, 2021

Plaintiff
Frost & Miller, LLP

By: _____
       Kenneth N. Miller
260 Madison Avenue, 17th Floor
New York, NY 10016
(646) 597-6274
kmiller@frsotmillerllp.com