UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FROST & MILLER, LLP, | |
| Plaintiff, | |
| -against- | |
| HEAVEN'S WAY INVESTMENT TRUST, et al., | |
| Defendants. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/20/2023

21-CV-6648 (AT) (BCM)

**REPORT AND RECOMMENDATION TO THE HON. ANALISA TORRES**

**BARBARA MOSES, United States Magistrate Judge.**

Invoking this Court's diversity jurisdiction, plaintiff Frost & Miller, LLP (Plaintiff or F&M), a law firm, seeks a default judgment against defendants Aaron Cain McKnight, Heaven's Way Investment Trust (HWIT), and SubGallagher Investment Trust (SGIT) (collectively, the Defaulted Defendants) in the principal amount of $345,000, plus interest at 9% since June 13, 2018, and costs of suit. The motion has been referred to me for report and recommendation.

As discussed in more detail below, this Court lacks subject matter jurisdiction, because both Plaintiff and HWIT are citizens of New Jersey. Since lack of subject matter jurisdiction deprives the Court of "power to hear the case" and "can never be forfeited or waived," *United States v. Cotton*, 535 U.S. 625, 630 (2002), the case should be dismissed without prejudice. Further, Plaintiff has failed to plead any cognizable claim against defendants SGIT or HWIT. Consequently, if the Court reaches the merits of the default motion, it should be denied as to HWIT and SGIT, and Plaintiff's claims against those defendants should be dismissed.

As to defendant McKnight, Plaintiff has adequately pleaded a claim for fraud. But it fails to show that it is entitled to $345,000, or any other reasonably certain sum, as damages. The $345,000 that Plaintiff seeks was wired into and out of its operating account as part of a fraudulent scheme by McKnight, using the firm as an unwitting conduit. The money never belonged to Plaintiff, is not owed by Plaintiff to anyone else, and – thanks to a settlement and release that

Plaintiff entered into with the only parties who assert a right to those funds – cannot be the subject of any future claim against Plaintiff. Consequently, if the Court reaches the merits, Plaintiff's default motion should be granted as against McKnight, but the judgment should be limited to nominal damages of $1, plus costs of suit.

## I.    BACKGROUND

### A.    Factual Allegations

F&M is a two-partner law firm in New York City, operating as a limited liability partnership (LLP). Am. Compl. (Dkt. 9) ¶ 1. Its partners, Gregory Frost and Kenneth N. Miller, live in the Bronx, New York, and River Vale, New Jersey, respectively. *Id.* Defendant McKnight, a citizen of Texas, was the firm's occasional client. *Id.* ¶¶ 3, 23.

On June 10, 2018, HWIT (believed by Plaintiff to be a Georgia trust headquartered in Duluth, Georgia) and Ann Fox (a citizen and resident of the United Kingdom) executed a Project Funding Asset Management Agreement (AMA), under which Fox was to provide a "cash deposit" of $345,000, to be invested by HWIT in unspecified "Non-Recourse Project Funding." Am. Compl. ¶¶ 2, 5, 17 & Ex. A (AMA), at 1, ¶¶ 1, 5.1. Unbeknownst to Plaintiff, which played no role in arranging the transaction, the AMA listed F&M as the "escrow agent" for the deposit and directed Fox to wire the funds to F&M's operating account (inaccurately described in the AMA as an "Escrow Account"). Am. Compl. ¶¶ 18-21, 36; AMA at 2, ¶ 4.2.

In the AMA, HWIT agreed to "provide a Performance Bond" to "undertake all risk management of the initial capital face amount of Three Hundred Forty-Five Thousand USD[.]" AMA ¶ 4.2. The Performance Bond was to be issued by SGIT (believed to be a Wyoming trust headquartered in Sheridan, Wyoming, *see* Am. Compl. ¶ 4), to "cover 100% of the initial capital amount based on the conditions as per theft or fraud . . . while being in the possession of ('HWIT') [sic] and escrow agent Frost & Miller LLP[.]" AMA ¶ 4.2.

On June 11, 2018, McKnight called attorney Miller and advised that "funds would be sent by wire transfer into [F&M's] general operating account." Am. Compl. ¶ 24. McKnight told Miller that "the funds were intended for [McKnight's] benefit," were "under his sole control," and that "there was no escrow agreement or escrow arrangement as to the funds," which were to be disbursed "strictly in accordance with McKnight's instructions." *Id.* McKnight did not mention HWIT or any relationship he had with HWIT, and did not tell Miller about the AMA. *Id.*

Two days later, on June 13, 2018, the sum of $345,000 was wired into the firm's operating account, via SWIFT Code, from the account of one "Danielle Amy Fox." Am. Compl. ¶ 25 & Ex. C; *see also* Declaration in Support of Order to Show Cause (Miller Decl.) (Dkt. 80) ¶ 13 & Ex. 7.[1] Miller knew nothing about the sender other than her name. Miller Decl. ¶ 10. However, insofar as the record reveals, Miller did not ask McKnight for any further information, and did not request any corroboration of McKnight's claims concerning the funds. Instead, the firm immediately "disbursed the funds in accordance with McKnight's emailed instructions," keeping $21,000 (as permitted by McKnight) and sending the rest to various nonparties, including $144,000 to CMcKnight Group Enterprises LLC; $140,000 to MJC Real Estate Co. Inc.; $20,000 to the alarmingly named Boiler Room Holdings Limited Llc; and $20,000 to one Ryshawn Delbridge in Bayonne, New Jersey. Am. Compl. ¶ 26; Miller Decl. ¶ 14 & Exs. 8-9.[2] According to the AMA,

---

[1] The record does not reveal the relationship, if any, between Ann Fox, who signed the AMA, and Danielle Amy Fox, who wired the funds. All further references in this Report and Recommendation to "Fox" are to Ann Fox.

[2] A New York lawyer is prohibited from commingling client funds with his own. *See* N.Y. Rule of Prof. Conduct (RPC) 1.15(a). This rule applies whether or not the lawyer is formally serving as an escrow agent. *See* RPC 1.15(b)(1) (a lawyer "who is in possession of funds belonging to another person incident to the lawyer's practice of law" must maintain those funds in "a special account or accounts," known as an IOLA account, separate from any business or personal accounts of the lawyer or lawyer's firm"); *see also Bhargava v. Grievance Comm. of Eighth Jud. Dist.*, 197 A.D.3d 89, 90, 148 N.Y.S.3d 814, 815 (4th Dep't 2021) (censuring attorney for allowing an acquaintance to move funds through attorney's escrow account "involving parties who were unknown to" attorney); *Matter of Andrews*, 183 A.D.3d 164, 169, 121 N.Y.S.3d 354, 358 (2d Dep't 2020)

Delbridge was the "Principal" and "CEO/Trustee" of HWIT. AMA at 1; *see also* Am. Compl. ¶ 31 (describing Delbridge as HWIT's "principal").

On June 21, 2018 (more than a week after the funds transited Plaintiff's operating account), SGIT executed an Irrevocable Trust Receipt Surety Deposit in Investment Guarantee (the Guarantee) in the amount of $345,000, for the benefit of Fox as "Owner" of the funds. Am. Compl. ¶ 22 & Ex. B (Guarantee), at 1. In the preamble, SGIT (referred to therein as "Trustee") recited that HWIT (referred to therein as "Asset Manager") "entered into a Private Asset Management Agreement, Asset Manager, Owner and Frost & Miller LLP as Asset Manager with Owner bearing the date of *June 21, 2018 and referred to collectively herein as the Contract*[.]" Guarantee at 1 (italics in original).[3] In the body of the document, HWIT and SGIT jointly and severally bound themselves "to the Owner for the return of the Investment Deposit pursuant to the Contract[.]" *Id.* ¶ 1. The Guarantee expressly disclaimed any intention to benefit third parties, stating: "No right of action shall accrue on this Guarantee to or for the use of any person or corporation other than the Owner named herein or the legal successors of the Owner." *Id.* ¶ 5. The Guarantee was signed by Delbridge on behalf of HWIT and by "P. Moore" on behalf of SGIT. *Id.* at 2.

Five months later, on November 15, 2018, Miller received a phone call from Femi Omomo (a citizen and resident of the United Kingdom), who told Miller that he was Fox's "partner," that Fox "had not received the promised return" on her investment, and that he "was inquiring as to the whereabouts of the funds." Compl. ¶¶ 6, 29. "This was the first time F&M or its partners had ever

_____

(suspending attorney for two years for, among other things, "depositing funds he received as a fiduciary, incident to his practice of law, into his operating account held at Chase Bank, rather than into his IOLA account"). Plaintiff does not explain why it allowed McKnight to move funds through its operating account in violation of its obligations under RPC 1.15.

[3] It is difficult to discern the import of this mangled language. To the extent SGIT intended to recite that F&M signed the AMA on June 21, 2018, it is inaccurate. The AMA is dated June 10, 2018, and is signed only by Fox and Delbridge (as "Chief Executive Officer/Trustee" of HWIT). AMA at 8.

4

heard from Fox or anyone representing her." *Id.* Miller called McKnight, who said that he would "resolve the issue[.]" *Id.* ¶ 30.

However, the matter was not resolved. After another nine months, on July 23, 2019, Miller received a letter from a lawyer, on behalf of Fox and Omomo, "demanding the return of Fox's funds." *Id.* ¶ 32; Miller Decl. ¶ 18. The letter (addressed to F&M, HWIT, SGIT, and McKnight) asserted, among other things, that Fox sent the money to F&M pursuant to the AMA, which Fox and Omomo's lawyer understood to have been "prepared by attorney Kenneth Miller." Miller Decl. Ex. 10, at 2. The letter accused F&M of unlawfully disbursing the funds "out of the attorney trust account without the consent of [Fox and Omomo]," in violation of the AMA and the firm's fiduciary obligations. *Id.*

Thereafter, on July 31, 2019, Miller obtained a copy of the AMA for the first time (apparently from the lawyer representing Fox and Omomo), Am. Compl. ¶ 34, and contacted Delbridge, HWIT's principal, who "admitted to Miller that his [Delbridge's] attorney drafted the [AMA] on behalf of HWIT" and that he "used Plaintiff's name and Miller's name in the AMA without their authorization." Am. Compl. ¶ 35. Miller then spoke to McKnight, who "again assured" him "that the matter would be resolved." *Id.* ¶ 37.

Once again, the matter was not resolved. Instead, Fox and Omomo filed a disciplinary action with "the New York State Attorney Grievance Committee" (Grievance Committee) against the firm and Miller, who were obliged to file a "detailed response." Am. Compl. ¶ 38; Miller Decl. ¶ 24. That response was supported by an affidavit from McKnight attesting to the "non-involvement" of F&M and its partners in the AMA and related transactions. Am. Compl. ¶ 39.[4] As of April 26, 2022, there was no decision by the Grievance Committee. Miller Decl. ¶ 24.

---

[4] Although Plaintiff quotes a portion of the McKnight affidavit, *see* Am. Compl. ¶ 40, neither the affidavit nor any other part of the Grievance Committee file has been submitted to this Court.

The other shoe dropped on March 26, 2021, when F&M received a pre-litigation demand letter from a law firm in London representing Henderson & Jones Limited (H&J), a "company registered in England and Wales which specialises in the funding of litigation." Am. Compl. Ex. D, ¶ 7.1. The letter stated that H&J was "taking assignment" of claims against F&M by Fox and Omomo, and planned to sue the firm for professional negligence, conversion, and related torts, seeking $345,000, plus interest and attorneys' fees, as permitted by U.K. law. *Id.* ¶¶ 1, 9.1-13.1. According to H&J, the $345,000 was "advanced on behalf of Mr. Omomo" by Fox, as his "agent," and was lost because F&M failed to "take any (or any reasonable) checks as to the purpose for which the $345,000 was paid into [its] Client Account by Ms. Fox," instead "incorrectly" forwarding the funds to McKnight. *Id.* ¶¶ 2, 7.3. F&J further advised that Omomo made a claim under the Guarantee, but that SGIT "would not honour the bond." *Id.* ¶ 7.12.[5]

This action followed.

## B.     Procedural Background

### 1.     The Pleadings

In its original Complaint (Compl.) (Dkt. 1), filed on August 6, 2021, Plaintiff named seven defendants: HWIT, Delbridge, McKnight, SGIT, Fox, Omomo, and H&J. In its Amended Complaint, filed as of right on August 12, 2021, Plaintiff named six defendants: HWIT, McKnight, SGIT, Fox, Omomo, and H&J.[6] Subject matter jurisdiction is based upon 28 U.S.C. § 1332(a)(3), "because Plaintiff and Defendants HWIT, McKnight and [SGIT] are citizens of different states of the United States and Defendants Fox, Omomo and H&J are citizens of a foreign state[.]" Am. Compl. ¶ 8.

---

[5] It is not clear from H&J's letter, nor from anything else in the record before this Court, what right Omomo had to make a claim under the Guarantee, which was issued for the sole benefit of Fox.

[6] The Amended Complaint dropped Delbridge as an individual defendant, perhaps because of his New Jersey citizenship, *see* Compl. ¶ 3, which destroyed diversity.

HWIT, which allegedly used Plaintiff's name in the AMA and falsely identified it as an escrow agent without the firm's knowledge or consent, is accused of common-law fraud, fraud by omission, and violation of N.Y. Gen. Bus. Law (GBL) § 380-s (identity theft). *See* Am. Compl. ¶¶ 44-51, 56-60. McKnight is accused of fraud by omission and aiding and abetting HWIT's identity theft. *Id.* ¶¶ 52-60. SGIT is accused of breach of contract, on the theory that F&M was a third-party beneficiary of the Guarantee. *Id.* ¶¶ 61-66. As against these defendants (now the Defaulted Defendants), the Amended Complaint requests damages "in an amount not presently ascertainable, but believed to be in excess of $450,000.00." *Id.* at 18-19.

As against Fox, Omomo, and H&J, Plaintiff sought a declaratory judgment establishing that H&J's alleged purchase of the Fox and Omomo litigation claims constituted "the offense of champerty," Am. Compl. ¶¶ 67-77; that "Plaintiff was not the escrow agent under the [AMA] and had no fiduciary duty to Fox and/or Omomo," *id.* ¶¶ 78-82; and that "the alleged claims of H&J, Fox, and Omomo against Plaintiff and its partners are time-barred" under the three-year statute of limitations "governing actions for professional negligence/malpractice." *Id.* ¶¶ 83-90 (incorrectly citing N.Y. C.P.L.R. (CPLR) § 213, rather than CPLR § 214(6)).

### 2. Service

Plaintiff served SGIT on September 2, 2021, by delivery of a summons and the Amended Complaint to an authorized agent at its office in Sheridan, Wyoming. (Dkt. 20.) After several unsuccessful attempts to serve HWIT and McKnight – who could not be found at any of the addresses they previously provided in the AMA or to F&M – Plaintiff obtained leave to serve them by "electronic mail and certified first-class mail with proof of delivery to their last known addresses" (Dkt. 39), which it did. (Dkts. 40, 41.) On January 4, 2022, the Court deemed Plaintiff's service attempts "sufficient and adequate," and directed HWIT and McKnight to answer or otherwise respond within 21 days. (Dkt. 43.) No answers were ever filed.

###    3.    Default

After SGIT, HWIT, and McKnight failed to answer, Plaintiff obtained Certificates of Default against each of them (Dkts. 31, 50, 51) and filed a series of piecemeal default motions, each brought on by a proposed Order to Show Cause, each naming a single Defaulted Defendant, and each seeking damages in the "principal amount" of $345,000, plus interest, $100,000 in punitive damages, and costs. (Dkts. 33-35, 52-54, 56-59.) However, Plaintiff's papers failed to explain the legal basis for recovery of the $345,000 principal amount sought, and failed to support the request with admissible evidence.

On February 22, 2022, after the default motions were referred to me (Dkt. 63), I directed Plaintiff to file "a *single* motion" for the entry of a default judgment against all defendants against whom such relief was sought, supported by (among other things), a memorandum of law and "*admissible evidence* sufficient to permit the Court 'ascertain the amount of damages with reasonable certainty.'" *Frost & Miller, LLP v. Heaven's Way Inv. Tr.*, 2022 WL 540070 (*Frost & Miller I*), at *2 (S.D.N.Y. Feb. 22, 2022) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)) (emphasis in original). I further instructed:

> [I]f plaintiff seeks actual (as opposed to statutory or nominal) damages, the default motion must be supported by one or more declarations or affidavits, which may attach and authenticate any documentary evidence needed to establish the proposed damages. Plaintiff's memorandum should demonstrate, for each Defaulting Defendant, how plaintiff has arrived at the proposed damages figure and should specifically tie the proposed damages to its legal claim(s) against that Defaulting Defendant.

*Frost & Miller I*, 2022 WL 540070 at *2.

On March 31, 2022, Plaintiff voluntarily dismissed its claims against H&J, Fox, and Omomo (Dkts. 75, 77). In a letter filed the same day, plaintiff explained that it had settled its claims against those defendants, (Dkt. 76 at 1), and requested leave to proceed against the remaining Defaulted Defendants based on its previously-filed applications, which it had "gone to a great deal

of effort and time to prepare." *Id.* at 2. In the alternative, Plaintiff requested an extension of time to file an omnibus application as to all Defaulted Defendants. *Id.*

By Order dated April 5, 2022 (4/5/22 Order) (Dkt. 78), I granted Plaintiff's alternative request for an extension, and reiterated that damages "must be established based on 'admissible evidence,'" which must be "sufficient to permit the Court to 'ascertain the amount of damages with reasonable certainty.'" 4/5/22 Order at 2 (citations omitted). I then took pains to outline the task ahead for Plaintiff:

> [A]ccording to plaintiff's previously-filed default papers, it seeks $345,000 in compensatory damages and $100,000 in punitive damages. However, plaintiff has not submitted any evidence in support of either figure, much less tied either amount to the conduct of any of the remaining defaulted defendants. To the contrary: the compensatory damages figure ($345,000) is simply the amount of the cash deposit that plaintiff allegedly received from defendant McKnight and disbursed according to his instructions. That money did not belong to plaintiff, which was not damaged by its disbursement. Moreover, although plaintiff alleges that now-settled defendant H&J threatened to sue plaintiff in the United Kingdom in connection with the cash deposit, it does not allege that H&J actually sued, much less that plaintiff was required to pay $345,000 (or any other sum) to H&J (or any other defendant). Similarly, although plaintiff alleges that now-settled defendants Fox and Omomo filed a disciplinary action against it in New York, its default papers do not tie the $345,000 it seeks to that disciplinary action, nor to any of the remaining defaulted defendants.

4/5/22 Order at 2-3 (record citations omitted).

On April 26, 2022, Plaintiff filed the motion now before the Court, brought on by a proposed Order to Show Cause (Dkt. 79) and supported by the Miller Declaration, three one-page Statements of Damages (one for each Defaulted Defendant) (Dkts. 82-84), and Plaintiff's memorandum of law (Pl. Mem.) (Dkt. 85).

### C.   Plaintiff's Motion

As in its prior papers, Plaintiff seeks a default judgment against each Defaulted Defendant in the principal amount of $345,000, plus interest at 9% since September 13, 2018, and costs. *See*

Statements of Damages; Pl. Mem. at 9, 20-23.[7] Plaintiff explains that it entered into a Settlement Agreement with Fox, Omomo, and H&J (collectively, the Former Defendants), under which:

(1)     Plaintiff dismissed its claims against the Former Defendants with prejudice, *see* Miller Decl. Ex. 12 (Sett. Ag.), ¶ 1(b);

(2)     Plaintiff agreed to assign any "final default judgments against HWIT, McKnight, and [SGIT]" that Plaintiff may obtain in this Court to the Former Defendants, *id.* ¶ 1(a); and

(3)     Plaintiff promised to forward any payments that it may receive from the Defaulted Defendants with respect to its anticipated default judgments against them (except for the first $20,000, which it is permitted to keep) to the Former Defendants. *Id.* ¶ 1(a)(i).

Plaintiff has no financial obligation to the Former Defendants *unless* it recovers a payment of more than $20,000 on the judgment it hopes to obtain from this Court. Moreover, the Former Defendants cannot pursue any of the claims against Plaintiff that they threatened in their pre-litigation demand letter, because, in consideration of their mutual undertakings, the settling parties released one another broadly from any and all claims arising out of or relating "in any way to any matter against" one another, except for claims arising out of the Settlement Agreement itself. Sett. Ag. ¶ 3(a)-(b). Separately, the settling parties agreed not to sue one another with respect to the released claims in the United Kingdom, the United States, "or any other jurisdiction," except for claims for breach of the Settlement Agreement. *Id.* ¶ 4. The Settlement Agreement is governed by New York law. *Id.* ¶ 8(k).

In its brief, Plaintiff explains that the judgment it seeks from the Defaulted Defendants is for "the benefit of Fox and Omomo." Def. Mem. at 9. Plaintiff confirms that any judgment it obtains in this Court will be assigned to the Former Defendants, and "all funds [Plaintiff] may collect pursuant to the judgment will be turned over by Plaintiff to the [Former] Defendants less a small sum to reimburse Plaintiff for its legal costs and expenses," so that the Former Defendants

---

[7] Plaintiff no longer seeks punitive damages.

will be "able to recover the Cash Deposit and right the wrongful acts committed by the [Defaulted] Defendants." *Id.* at 20.

On April 27, 2022, I issued the Order to Show Cause (OSC) (Dkt. 86), directing the Defaulted Defendants to show cause on June 6, 2022, why judgment should not be entered against each of them in the amount sought by Plaintiff. OSC at 1. I further directed Plaintiff to serve the OSC and its supporting papers upon HWIT's principal Delbridge (by email and regular mail to his last known address), upon McKnight (by email and regular mail to his last known address), and upon SGIT (by Federal Express), and ordered the Defaulted Defendants to file their papers in opposition to Plaintiff's motion, if any, by May 18, 2022. *Id.* at 2.

Plaintiff filed affidavits of service as to all three Defaulted Defendants on May 2, 2022 (Dkts. 87, 88), but no opposition papers were filed.[8] At the show-cause hearing on June 6, 2022, attorney Miller appeared on behalf of Plaintiff, but none of the Defaulted Defendants appeared. *See* Tr. of June 6, 2022 Hr'g (Tr.) (Dkt. 90) at 4:2-14.

During that hearing, the Court questioned Plaintiff's counsel concerning its novel damages theory. When asked whether the $345,000 sought was "ever your money," Tr. at 9:19-21, counsel responded that the money was "in my account, it wasn't in an escrow account." *Id.* at 9:22-23. He added, however, that Plaintiff sought that $345,000 not for itself but "so that we can give it to the rightful owners of that money." *Id.* at 10:2-3. When asked who the "rightful owners" were, counsel answered, "either Ms. Fox or Mr. Omomo[.]" *Id.* at 16:13-15. When asked if F&M actually owed $345,000 to the "rightful owners," counsel responded, "According to them I do," and explained,

---

[8] According to several obituary notices posted on the internet (of which the Court was unaware when issuing the OSC), an individual named Ryshawn Delmar Delbridge, whose details match those of HWIT's principal, died a month before the OSC was issued, on March 23, 2022. *See, e.g.*, Jackson Funeral Residence of Jersey City, LLC, "Ryshawn Delmar Delbridge," https://www.jacksonjc.com/obituary/ryshawn-delbridge (last visited January 20, 2023).

"if I can't get the judgment against these individuals, they're going to come after us for the money." *Id.* at 10:4-20. *See also id.* at 20:12 ("I need that $345,000 to turn it over to these people.").[9]

At the conclusion of the hearing, the Court gave Plaintiff an opportunity to submit a supplemental letter-brief to support its theory that it could recover, as damages, a sum of money which never belonged to it, and which it does not presently owe to anyone, but which – it fears – could be the subject of a claim from a third party in the future. Tr. at 22:21-23:3; *see also* Order dated June 6, 2022 (Dkt. 89) (authorizing supplemental letter-brief).

In its supplemental letter-brief, filed on June 13, 2022 (Supp. Ltr.) (Dkt. 92), Plaintiff advances a new damages theory, arguing that because the $345,000 came into its "general business operating account," rather than a client trust account, the firm is entitled to a "rebuttable presumption" that it owned the funds. Supp. Ltr. at 1 (*citing Axginc Corp. Formerly Known as Axis Grp. v. Plaza Automall, Ltd.*, 2022 U.S. Dist. LEXIS 90477, at *27 (E.D.N.Y. Feb. 20, 2022), *report and recommendation adopted sub nom. Axginc Corp. v. Plaza Automall, Ltd.*, 2022 U.S. Dist. LEXIS 90431 (E.D.N.Y. May 19, 2022)). Plaintiff further contends that since the parties who "benefited from the conversion of those funds . . . have defaulted," they have also "waived any right to rebut the presumption." *Id.* at 2.

## II.    DISCUSSION

### A.    Legal Standards

Fed. R. Civ. P. 55 "provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City*

---

[9] In fact, under the Settlement Agreement, the Former Defendants cannot "come after [Plaintiff] for the money," because they released those claims. *See* Sett. Ag. ¶¶ 3(a), 4. When the Court pointed this out, Plaintiff's counsel responded, "I am certain that once we don't get a judgment I'm going to wind up with a claim for fraud, defrauding them [in]to entering into the settlement . . ." Tr. at 12:2-4.

*of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). The first step, ordinarily performed by a clerk, *see* Fed. R. Civ. P. 55(a), "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Mickalis Pawn Shop*, 645 F.3d at 128. The second step, which in most cases requires a motion made to and granted by the district judge, *see* Fed. R. Civ. P. 55(b)(2), "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled[.]" *Mickalis Pawn Shop*, 645 F.3d at 128.[10]

"[A] default is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). Therefore, in considering a motion for the entry of judgment after default, the court must accept all well-pleaded factual allegations in the complaint as true, except those relating to damages. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015) (summary order). Thus, if "the well-pleaded factual allegations in the complaint fail to state a claim upon which relief can be granted, no damages can be awarded, even if the post-default inquest submissions supply the missing information." *Mondragon v. Keff*, 2019 WL 2551536, at *4

---

[10] Under Local Civil Rule 55.2(c), "all papers submitted to the Court" in connection with a default judgment motion "shall simultaneously be mailed to the party against whom a default judgment is sought," at that party's last known address. However, under Fed. R. Civ. P. 55(b)(2), a motion for entry of a default judgment need not be served upon the party against which the judgment is sought unless that party has previously "appeared personally or by a representative" in the action. Case law in this District makes clear that a plaintiff's failure to provide actual notice of its default motion to a defendant that never appeared does not preclude the entry of the requested default judgment. *See Flores Garcia v. Grocery-Taqueria Mexicana Corp.*, 2022 WL 17979917, at *4 (S.D.N.Y. Nov. 29, 2022) (collecting cases), *report and recommendation adopted*, 2022 WL 17978895 (S.D.N.Y. Dec. 28, 2022).

(S.D.N.Y. May 31, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL 2544666 (S.D.N.Y. June 20, 2019).

When assessing the sufficiency of a complaint for liability purposes, the district court may consider documents "attached to the complaint, incorporated by reference, or integral to the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2679 (2022) (mem.). In a case founded upon a contract or other written instrument, the terms of the annexed instrument trump any contrary description in the body of the complaint. *See, e.g.*, *US All. Fed. Credit Union v. M/V Kamara Fam.*, 2022 WL 607048, at *3 (E.D.N.Y. Feb. 8, 2022) (recommending denial of default motion due to discrepancies between the complaint and the underlying mortgage), *report and recommendation adopted*, 2022 WL 603933 (E.D.N.Y. Mar. 1, 2022).

"The entry of a default, while establishing liability, 'is not an admission of damages.'" *Mickalis Pawn Shop*, 645 F.3d at 128 (quoting *Finkel*, 577 F.3d at 83 n.6). Thus, "[e]ven in connection with a default judgment, the court has an obligation to ensure that damages are appropriate and determined with reasonable certainty." *Healing Power, Inc. v. Ace Cont'l Exports, Ltd.*, 2008 WL 4693246, at *5 (E.D.N.Y. Oct. 17, 2008). This means, among other things, that the damages sought must be recoverable under applicable law as a remedy for the defaulted claims, and the amount must be established with "reasonable certainty," *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 121 (S.D.N.Y. 2008) (quoting *Langenberg v. Sofair*, 2006 WL 3518197, at *1 (S.D.N.Y. Dec. 7, 2006)), "based on admissible evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order).

The court may – but is not required to – hold an evidentiary hearing as to damages. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993). In this case, I

specifically directed Plaintiff to make any request for an evidentiary hearing in its motion papers. *See Frost & Miller I*, 2022 WL 540070 at *2. No such request was made, and no evidentiary hearing was held.

### B. Jurisdiction

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). If the district court "lacks the statutory or constitutional power to adjudicate" a case, it must be dismissed for lack of subject matter jurisdiction. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Subject matter jurisdiction "can never be forfeited or waived," *Cotton*, 535 U.S. at 630, and "federal courts have a duty to inquire into their subject matter jurisdiction *sua sponte*" even if the parties do not raise it. *Hermès of Paris, Inc. v. Swain*, 867 F.3d 321, 324 n.3 (2d Cir. 2017) (quoting *F5 Capital v. Pappas*, 856 F.3d 61, 75 (2d Cir. 2017)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Plaintiff invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(3), which provides that a federal district court has original jurisdiction in cases among "citizens of different states, and in which citizens or subjects of a foreign state are additional parties," and where the matter in controversy exceeds $75,000. The statute requires "complete" diversity; that is, "all plaintiffs must be citizens of states diverse from those of all defendants." *Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir.), *as amended* (Nov. 12, 2014) (*citing Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)). "[T]he existence of diversity jurisdiction depends on the citizenship of the parties at the time the action is commenced." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998). In this case, complete

diversity is lacking, because both Plaintiff and HWIT were citizens of New Jersey at the time this action was commenced.

Plaintiff is an LLP. Am. Compl. ¶ 1. One of its partners lives in New York and the other lives in New Jersey. *Id.* Since an LLP takes on the citizenship of its partners for diversity purposes, *see Roche Cyrulnik Freedman LLP v. Cyrulnik*, 582 F. Supp. 3d 180, 187 (S.D.N.Y. 2022); *Milberg LLP v. HWB Alexandra Strategies Portfolio*, 2020 WL 3833829, at *2 (S.D.N.Y. July 8, 2020), *aff'd sub nom. Milberg, LLP v. Drawrah Ltd.*, 844 F. App'x 397 (2d Cir. 2021), Plaintiff is a citizen of both New York and New Jersey.

HWIT is alleged to be "a trust formed under the laws of the State of Georgia," with its principal place of business in Duluth, Georgia. Am. Compl. ¶ 2. The citizenship of a trust, however, is not determined by its state of formation or principal place of business. "[I]t is the trustee's citizenship . . . that matters for purposes of diversity." *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 722 (2d Cir. 2017); *accord U.S. Bank, Nat'l Ass'n v. UBS Real Est. Sec. Inc.*, 205 F. Supp. 3d 386, 411 (S.D.N.Y. 2016). The AMA, attached to the Amended Complaint, identifies Ryshawn Delbridge as the trustee of HWIT. AMA at 1, 8. Delbridge's address, according to McKnight's disbursement emails, was in Bayonne, New Jersey. Miller Decl. Ex. 8, at ECF page 1. *See also* Compl. ¶ 3 (naming Delbridge as an individual defendant and affirmatively alleging that he was a citizen of New Jersey). Since Delbridge was a citizen of New Jersey when this action was commenced, HWIT was also a citizen of New Jersey, meaning that – regardless of the citizenship of the remaining defendants – the parties were not completely diverse.[11] This, in turn, deprives the

---

[11] The Amended Complaint alleges that McKnight was a citizen of Texas; Fox and Omomo were citizens of the United Kingdom; H&J was a "private United Kingdom company" with its principal place of business in London; and SGIT was "a trust formed and existing under the laws of the State of Wyoming," with its principal place of business in Sheridan, Wyoming. Am. Compl. ¶¶ 3-7. Plaintiff does not identify the trustee of SGIT.

Court of subject matter jurisdiction. *See Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) ("If subject matter jurisdiction is lacking," even if "no party has called the matter to the court's attention, the court has the duty to dismiss the action sua sponte.").

For the sake of completeness, I nevertheless proceed to analyze the remaining issues presented by Plaintiff's default motion.

In addition to subject matter jurisdiction, a plaintiff seeking a default judgment must establish personal jurisdiction over the defaulted defendants, including adequate service of process on each of them. *Frost & Miller I*, 2022 WL 540070, at *1-2; *see also Sheldon v. Plot Commerce*, 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016) ("Personal jurisdiction is a necessary prerequisite to entry of a default judgment."), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). Here, Plaintiff has adequately pleaded specific personal jurisdiction over McKnight, HWIT, and SGIT. *See* Am. Compl. ¶¶ 9-11. In addition, the docket shows that service on SGIT was effected in accordance with Fed. R. Civ. P. 4(h)(1)(B); service on McKnight was effected in accordance with Fed. R. Civ. P. 4(e)(1) (defaulting to state law) and CPLR § 308(5) (permitting alternative service "in such manner as the court . . . directs"); and service on HWIT, through its trustee, was effected in accordance with Fed. R. Civ. P. 4(h)(1)(A) (defaulting to Rule 4(a)(1), which defaults to state law) and CPLR § 308(5).

### C. Liability

#### 1. SGIT

Plaintiff pleads a single claim against SGIT, alleging that it "failed to perform its obligations under the [Guarantee] and did not pay Defendant Fox the Cash Deposit as provided for under the terms of the Bond." Am. Compl. ¶ 65. Plaintiff's theory is that it is entitled to recover,

as a third-party beneficiary, for SGIT's breach of its contractual obligation to Fox. *Id.* ¶¶ 63-64; *see also* Pl. Mem. at 21-22.

Under New York law, "a third party may sue as a beneficiary on a contract made for his benefit. However, an intent to benefit the third party must be shown, and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contracts." *Port Chester Elec. Const. Co. v. Atlas*, 40 N.Y.2d 652, 655, 357 N.E.2d 983, 985-86 (1976) (citations omitted). Thus, New York courts have "sanctioned a third party's right to enforce a contract in two situations: when the third party is the only one who could recover for the breach of contract or when it is otherwise clear from the language of the contract that there was 'an intent to permit enforcement by the third party.'" *Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 710, 94 N.E.3d 456, 459 (2018) (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45, 485 N.E.2d 208, 212 (1985)); *see also Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 663 (2d Cir. 1996) ("New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement.") (quoting *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 733 (S.D.N.Y. 1989)).

Plaintiff has failed to state any cognizable claim against SGIT. The Owner named in the Guarantee is Fox. Although Plaintiff is mentioned in the document (as part of a jumbled "whereas" clause which appears to suggest, incorrectly, that Plaintiff was a party to the AMA), the Guarantee expressly disclaims any intention to benefit anyone other than the Owner and her "legal successors," stating: "No right of action shall accrue on this Guarantee to or for the use of any person or corporation other than the Owner named herein or the legal successors of the Owner." Guarantee ¶ 5. Under New York law, this clause is dispositive of the issue and fatal to plaintiff's claim against SGIT. *See India.Com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005); *FGP 1, LLC v. Dubrovsky*, 197 A.D.3d 441, 443, 153 N.Y.S.3d 23, 25 (1st Dep't 2021); *Nepco Forged Prods.,*

*Inc. v. Consol. Edison Co. of N.Y., Inc.*, 99 A.D.2d 508, 470 N.Y.S.2d 680, 681 (2d Dep't 1984). Consequently, even if this Court had subject matter jurisdiction of the case, Plaintiff would not be entitled to a default judgment against SGIT.

### 2. McKnight

In New York, a fraud plaintiff must allege "that the defendant knowingly or recklessly misrepresented a material fact, intending to induce the plaintiff's reliance, and that the plaintiff relied on the misrepresentation and suffered damages as a result." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007). A claim for "fraudulent concealment" requires proof of: "(1) failure to discharge a duty to disclose; (2) an intention to defraud, or scienter; (3) reliance; and (4) damages." *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 90-91 (2d Cir. 2005) (*citing Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 152 (2d Cir. 1993)). "In the context of a business transaction, the duty to disclose arises where a party, with a duty to be complete, has made only a partial or ambiguous statement, or 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" *Id.* (quoting *Brass*, 987 F.2d at 150). The plaintiff must also establish that its reliance on the misrepresentation or omission was "justifiable," *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 827, 59 N.E.3d 485, 491 (2016), or "reasonable." *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 484 (S.D.N.Y. 2018). In a federal diversity action, the defendant's fraud "must be pleaded with particularity." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (*citing* Fed. R. Civ. P. 9(b)).

F&M alleges that it was induced to accept and disburse the $345,000 at issue by McKnight's representations that the funds were intended for McKnight's benefit, were under his "sole control," and were not subject to any escrow agreement or arrangement. Am. Compl. ¶ 24. These representations were false, in that – as McKnight later acknowledged to the Grievance

Committee – the funds belonged to an investor, were intended for her benefit, and were supposed to be placed in an escrow account and then invested "in certain structured high leverage financial transactions with a guaranteed return." *Id.* ¶ 40. Moreover, in his conversations and emails with Miller, McKnight failed entirely to mention Delbridge, HWIT, or the AMA. *Id.* ¶¶ 40, 57. Had F&M known about the underlying transaction, or seen the AMA, it would have "undertaken to prepare an escrow agreement" and taken other "steps to protect itself." *Id.* ¶¶ 58-59.

It is not clear to this Court that Plaintiff could establish that its reliance on McKnight's representations was justifiable or reasonable. Even accepting Plaintiff's allegations as true, the facts alleged – including the mysterious arrival of funds from an unknown sender, the lack of any documentation or other corroboration for McKnight's representations that the money was for his "benefit" and under his "sole control," his specific direction of the funds into the firm's "operating account," Am. Compl. ¶ 24, causing F&M to violate RPC 1.15, and his eagerness to see the funds disbursed promptly, *see* Miller Decl. Exs. 5, 6, 8 – raise a number of red flags, which at summary judgment or trial could be challenging for Plaintiff to overcome.[12] However, reasonable reliance is a "fact-intensive" inquiry, *Silvercreek*, 346 F. Supp. 3d at 484, and I am required, in the present context, to construe the Amended Complaint favorably to Plaintiff. *See Finkel*, 577 F.3d at 84 (after default, "a court is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor"). I therefore conclude that F&M has stated a claim for fraudulent concealment against McKnight.

---

[12] Plaintiff's banking records show the receipt of another substantial wire transfer into its operating account on June 25, 2018, in the amount of $500,000. Miller Decl. Ex. 7, at 1. Although the name of the sender is redacted, the records show that almost all of that money – $485,000 – was wired out the next day to CMcKnight Group Enterprises Ltd., leaving only $56,001.02 in the firm's operating account. *Id.* at 3. It thus appears that F&M's willingness to make its operating account available to McKnight was not limited to the events at issue in this action.

### 3. HWIT

Plaintiff cannot, however, state a fraud claim against HWIT, because HWIT never made any direct statements to F&M, false or otherwise, until well after the fact. Rather, according to Plaintiff, HWIT made a knowingly false statement *to Fox*, by representing in the AMA that F&M was the escrow agent for the contemplated transaction, which it knew was not the case. Am. Compl. ¶¶ 19, 45. This misrepresentation induced Fox (or possibly Omomo) to send $345,000 to F&M's operating account, where McKnight was able to divert it to his own ends, unencumbered by the restrictions that would have been written into an actual escrow agreement. *Id.* ¶¶ 26, 58-59.

In some states, these allegations would be sufficient to state a fraud claim under the third-party reliance doctrine. But not in New York. *See Pasternack*, 27 N.Y.3d at 827, 59 N.E.3d at 491 (holding, on a certified question, that "under New York law, such third-party reliance does not satisfy the reliance element of a fraud claim"); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 412 F. Supp. 3d 392, 410 (S.D.N.Y. 2019) (dismissing fraud claim because, after *Pasternack*, a plaintiff cannot base such a claim upon false statements that were not communicated to it, and upon which it did not rely), *aff'd*, 13 F.4th 247 (2d Cir. 2021).[13]

Nor has plaintiff stated a claim for identity theft under GBL § 380-s, which makes it unlawful to "knowingly and with the intent to defraud, obtain, possess, transfer, use, or attempt to

---

[13] Where an intentionally false or misleading statement is communicated by the defendant to the plaintiff through an intermediary who acts as a "mere conduit," and where the defendant intended that statement to be communicated and relied on by the plaintiff, the defendant may be liable for fraud on an "indirect" reliance theory. *Loreley Fin. (Jersey) No. 3 Ltd.*, 13 F.4th at 260. However, this "theory of third-party reliance is limited" to cases where "the third party acts as a scrivener by transcribing and distributing a defendant's representations without filtering or modification." *Id.* Plaintiff does not plead that McKnight was serving as a "mere conduit" for HWIT, much less that he was transmitting HWIT's representations "without filtering or modification" when he falsely told Miller that the incoming funds were for his benefit, were under his sole control, and were not subject to any escrow arrangement. Consequently, the Amended Complaint does not state a fraud claim against HWIT on a theory of third-party reliance.

obtain, possess, transfer, or use credit, goods, services or anything else of value in the name of another person without his or her consent." N.Y. Gen. Bus. Law § 380-s. Section 380-s is part of New York's Fair Credit Reporting Act, which means that a civil claim can be brought "*only* if the identity theft 'resulted in the transmission or provision to a consumer reporting agency of information that would otherwise not have been transmitted or provided.'" *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 442 (2d Cir. 2015) (quoting GBL § 380-l) (emphasis added); *see also Blackman v. JPMorgan Chase, N.A.*, 2022 WL 970729, at *16 (E.D.N.Y. Mar. 31, 2022) (dismissing GBL § 380-s claim for failure to plead any conduct that "implicate[d] credit reporting").[14] Plaintiff pleads no such conduct. Consequently, even if this Court had subject matter jurisdiction, Plaintiff would not be entitled to a default judgment against HWIT.

### D. Damages

In its pleading, Plaintiff alleges that, as a result of McKnight's fraud, it was required to defend itself against a Grievance Committee complaint. Am. Compl. ¶¶ 38-40; *see also* Miller Decl. ¶ 24. In its brief, Plaintiff adds that it has "sustained substantial legal fees and expenses" in connection with that matter and with the threats of suit from the Former Defendants. Pl. Mem. at 19. During the show-cause hearing, counsel elaborated on that point, explaining that since 2018 he has been required to "deal with attorneys in Italy," "deal with attorneys in the United Kingdom," and "pay [an] English solicitor." Tr. at 18:22-19:2, 19:25-20:7. In its motion papers, however, Plaintiff makes no attempt to quantify – or even estimate – the costs associated with those efforts, and it has submitted no evidence to substantiate them. Instead, Plaintiff seeks $345,000, representing the funds that transited its bank account on June 13, 2018, plus interest and costs. *See*

---

[14] Since HWIT cannot be liable to Plaintiff under GBL § 380-s, McKnight cannot be liable to it for "aid[ing] and abet[ting] Defendant HWIT in its wrongful use of Plaintiff's name and identification[.]" Am. Compl. ¶ 53.

Statements of Damages; Pl. Mem. at 9, 19-20, 23. But that $345,000 is not the measure of any compensable injury to Plaintiff.

In New York, "'[t]he true measure of damage" in a fraud case "is indemnity for the actual pecuniary loss sustained as the direct result of the wrong' or what is known as the 'out-of-pocket' rule." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 1373 (1996) (quoting *Reno v. Bull*, 226 N.Y. 546, 553, 124 N.E. 144, 146 (1919); *see also Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993) ("New York law awards only 'out-of-pocket' expenses in fraud cases, entitling plaintiffs to damages solely for their actual pecuniary losses").

Plaintiff is not out-of-pocket the $345,000 it seeks. To the contrary: as it has repeatedly explained, it was *Fox* who agreed with HWIT to wire that sum to F&M; it was *Fox* (or possibly Omomo) who sent the money to F&M (from the account of someone else named Fox); and it was *Fox* (or possibly Omomo) who lost the money when F&M disbursed it at McKnight's direction (keeping $21,000 for itself). Thus, it is *Fox* (or possibly Omomo) who has suffered an "actual pecuniary loss" in the principal amount of $345,000 as a result of the fraud allegedly committed by McKnight.

Plaintiff acknowledges this point in its default papers:

> We are requesting the Court to enter judgment in the amount of $345,000 *for the benefit of Fox and Omomo*[, who] were defrauded by HWIT, McKnight and SubGallagher[,] in order to return the funds *they* caused to be sent to Plaintiff. The Defendants have never returned these funds or provided any return on the purported investment of those funds *to Fox and Omomo*. The judgment in the amount requested is just and proper *to make the victims of the Defendants['] fraud, Fox, Omomo and Plaintiff, whole*. This result is why we commenced the action to right the wrongful acts of the Defendants and at the very heart of Plaintiffs' settlement with H&J, Fox and Omomo.

Miller Decl. ¶ 36 (emphases added); *accord* Pl. Mem. at 9, 19-20; Tr. at 10:2-3, 16:13-15, 20:12-13.

This Court cannot award $345,000 to Plaintiff as compensation for the theft of that amount from someone else. Indeed, had Plaintiff pleaded its case on that theory, it would have been subject to dismissal for lack of standing. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("The Art. III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*") (emphasis added); *Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 373 (2d Cir. 2004) ("To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury *to himself* that is fairly traceable to the allegedly unlawful conduct of the defendant.") (cleaned up) (emphasis added).[15]

Nor can this Court award $345,000 to Plaintiff based on its fear that the Former Defendants are "going to come after [it] for the money." Tr. at 10:19-20. As noted above, Fox, Omomo, and H&J have expressly waived their rights to do so. *See* Sett. Ag. ¶¶ 3(a), 4. Moreover, while a plaintiff who has been sued by a third party due to the "wrongful act" of a fraudster may recover, as damages, "the reasonable value of [its] attorneys' fees and other expenses thereby suffered or incurred," *Goldberg v. Mallinckrodt, Inc.*, 792 F.2d 305, 309 (2d Cir. 1986) (quoting *Coopers & Lybrand v. Levitt*, 52 A.D.2d 493, 496, 384 N.Y.S.2d 804, 807 (1st Dept. 1976)), those damages must have been incurred in an actual lawsuit. *Coopers & Lybrand*, 52 A.D.2d at 496, 384 N.Y.S.2d at 807 (recovery of litigation costs is permissible "[i]f, through the wrongful act of his present adversary, a person [was] involved in earlier litigation with a third person") (quoting *Shindler v. Lamb*, 25 Misc. 2d 810, 812, 211 N.Y.S.2d 762, 765 (N.Y. Sup. Ct. 1959), *aff'd*, 10 A.D.2d 826, 200 N.Y.S.2d 346 (1st Dep't 1960), *aff'd*, 9 N.Y.2d 621, 210 N.Y.S.2d 226, 172 N.E.2d 79

---

[15] Assuming that the money did in fact come from Fox and/or Omomo, one or both of those Former Defendants could have appeared in this action, cross-claimed against HWIT, McKnight, and/or SGIT, and pursued a judgment in the same amount at issue here, that is, $345,000 plus interest and costs. However, having failed to appear, the Former Defendants cannot rely on Plaintiff to redress their injuries.

(1961)).[16] There is no basis in New York law for awarding damages to a fraud plaintiff measured by the fees that *might* be incurred or the money judgment that *might* be awarded *if*, as a result of the fraud, a third party were to sue the plaintiff in the future.

The alternative damages theory that Plaintiff articulates in its post-hearing letter-brief is no more tenable. In the bankruptcy context, a debtor's "possession" of funds in its bank account raises a rebuttable presumption that the debtor "owns" those funds. *Axginc Corp.*, 2022 U.S. Dist. LEXIS 90477, at *27. But this is not a bankruptcy proceeding, and in any event the Amended Complaint does not allege that Plaintiff ever "owned" the $345,000 that was wired into its operating account on June 13, 2018. Even in its post-hearing letter-brief, Plaintiff carefully stops short of making that claim, presumably because it would be false. *See* Supp. Ltr. at 1 (arguing that the "deposit of [the $345,000] into Plaintiff's account" provided Plaintiff with "possession" of the funds, which is "sufficient to support Plaintiff's claim as to the amount of its damages"). Consequently, even if this Court had subject matter jurisdiction, it could not award the $345,000 that Plaintiff seeks.

Having failed (despite repeated prompts from the Court) to request damages reflecting its own pecuniary loss, or to substantiate those damages with admissible evidence, Plaintiff is entitled, at best, to a judgment of liability against McKnight, nominal damages, and costs of suit. *See Yegoryan v. Morales*, 2010 WL 3909208, at *1 (E.D.N.Y. Sept. 27, 2010) (entering a default judgment in the amount of $1 on each of plaintiff's two claims, where plaintiff was "given multiple opportunities to submit documentation sufficient to determine damages," but "failed to do so").

---

[16] *See also Dukes Bridge, LLC v. Sec. Life of Denver Ins. Co.*, 2020 WL 4070094, at *4 (E.D.N.Y. July 20, 2020) (fees may be awarded "only for earlier litigation with a third party"), *aff'd*, No. 20-2687-CV L, 2021 WL 5986871 (2d Cir. Dec. 17, 2021); *Healing Power*, 2008 WL 4693246, at *6 ("In limited circumstances, a fraud victim may recover attorney's fees – at least those predating the litigation alleging fraud – 'as out of pocket damages.'") (quoting *AMC Film Holdings LLC v. Rosenberg*, 2006 WL 2827860, at *5 (E.D.N.Y. Sept. 29, 2006)).

## III.   CONCLUSION

For the reasons set forth above, I recommend, respectfully, that this action be DISMISSED, without prejudice, for lack of subject matter jurisdiction. In the alternative, if the Court proceeds to the merits of Plaintiff's motion for a default motion, I recommend, respectfully, that the motion be DENIED as to defendants Heaven's Way Investment Trust and SubGallagher Investment Trust; that the Certificates of Default be VACATED and Plaintiff's claims be DISMISSED as to those defendants; that the motion be GRANTED as to defendant Aaron Cain McKnight; and that Plaintiff be awarded nominal damages of $1 against McKnight, plus costs of suit, which it must document within 30 days after the entry of final judgment in accordance with Fed. R. Civ. P. 54(d)(1) and Local Civ. R. 54.1.

Plaintiff is directed to promptly serve a copy of this Report and Recommendation on each Defaulted Defendant in the same manner prescribed in the OSC, and to file proof of such service on the docket no later than January 27, 2023.

Dated:  January 20, 2023
        New York, New York

**BARBARA MOSES**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Analisa Torres at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007. Any request for an extension of time to file objections must be directed to Judge Torres. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).